# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br>                Plaintiff,<br>and,<br>KEVIN D. MCDOWELL,<br>                Plaintiff-Intervenor,<br>v.<br>PARKER DRILLING COMPANY,<br>                Defendant. | Case No. 3:13-cv-00181-SLG |

## MEMORANDUM OF DECISION & ORDER RE EQUITABLE RELIEF

This case was initially brought by the Equal Employment Opportunity Commission under the Americans with Disabilities Act, 42 U.S.C. 12101 *et seq.* ("ADA"). The EEOC's Complaint was filed on September 18, 2013.[1] By order dated February 27, 2014, Kevin McDowell was permitted to intervene as an additional Plaintiff in the case. His Complaint, filed the following day, included an ADA claim as well as a claim pursuant to Alaska Statute 18.80.220(a)(1).[2]

The case relates to an employment decision that Parker Drilling made with respect to Mr. McDowell in early 2010. Plaintiffs alleged that Parker Drilling discriminated against Mr. McDowell at that time when it rescinded a job offer to him for a manager position on

---

[1] Docket 1 (Compl.).

[2] Docket 30 (Compl. of Plaintiff-Intervenor).

an oil rig because it regarded Mr. McDowell as having a disability due to the fact that he has monocular vision.

The parties agreed that federal law provides that the determination of liability and the amount of any non-economic losses are issues for a jury, while the determination of any award for economic losses and the propriety and scope of any injunctive relief are equitable remedies to be determined by the Court. To the extent a party may have had a right to a jury trial on the economic losses to award under state law, each party specifically waived that right on the record during the trial.

Accordingly, a jury trial on the issues of liability and compensatory and punitive damages began on March 25, 2015 and concluded on April 2, 2015.[3] The jury reached a verdict in which it concluded that Kevin McDowell had proven his disability claim under Alaska law, but awarded no non-economic damages for that claim. The jury also found that Plaintiffs had proven their claim that Parker Drilling had violated the ADA, and found that Mr. McDowell was entitled to $15,000 in non-economic damages for that claim. And the jury found that an award of punitive damages was not warranted.[4]

While the jury trial was proceeding, the parties also presented evidence to the Court outside the presence of the jury with respect to Plaintiffs' claims for equitable relief, including an award of economic damages to Mr. McDowell and prospective injunctive relief to the EEOC.[5] In addition, the parties submitted post-trial briefing to the Court that

---

[3] Dockets 328 & 338 (Minute Entries).

[4] Docket 343 (Special Verdict).

[5] Dockets 344, 346, 347, 348 (Minute Entries).

focused on Mr. McDowell's obligation to obtain and maintain "substantially similar employment" when determining past economic loss and on the EEOC's claim for injunctive relief.[6] This Memorandum is intended to address all of those claims.

Federal Rule of Civil Procedure 52(a) provides that "[i]n an action tried on the facts without a jury . . . the court must find the facts specially and state its conclusions of law separately." Accordingly, and having considered the testimony of the witnesses, the exhibits admitted into evidence, and the parties' submissions, the Court now makes the following Findings of Fact and Conclusions of Law as set forth below.[7]

## **FINDINGS OF FACT**

1. Plaintiffs presented the testimony of EEOC Economist Elvira Sisolak in support of their back pay and front pay calculations. For back pay, Ms. Sisolak computed an amount due of $626,053 from February 2010 through March 2015. She first computed the amount of back pay plus lost benefits that she determined Mr. McDowell would have earned had he worked at Parker Drilling during that time frame, then determined the amount that Mr. McDowell would have received in mitigation during that same timeframe (including benefits), computed the difference for each year, then added in interest.

---

[6] Dockets 370, 380, 382, 393, 400 (Supplemental Briefs).

[7] This Memorandum of Decision does not purport to recite all of the evidence submitted and arguments made by the parties. *See* Fed. R. Civ. P. 52(a) Advisory Committee Note ("the judge need only make brief, definite, pertinent findings and conclusions upon the contested matters. There is no necessity for overelaboration of detail or particularization of facts.").

2. The Court was not persuaded by Ms. Sisolak's analysis, in large part because she did not rely upon the amount that was actually paid by Parker Drilling to its rig managers during this time period. For example, in 2012, Parker Drilling paid Pat Lynch, a rig manager for Parker Drilling, a total of $166,291 in compensation for that year. (Ex. BU-3). But Ms. Sisolak estimated that Mr. McDowell would have been paid $196,976 from Parker Drilling in 2012—an amount nearly 20% greater. In addition, Parker Drilling demonstrated that it provided each employee with approximately $10,085 in health and welfare benefits, along with 5% of the employee's earnings in matching 401(k) funds (which amounts to $8,315 for Mr. Lynch in 2012) for a total benefits package to Mr. Lynch worth $18,400 for 2012. (Ex. BM) But Ms. Sisolak estimated the value of those lost benefits to Mr. McDowell in 2012 at $78,790—an amount over 4 times greater than the actual value of the benefits Mr. Lynch received. (Ex. 39).[8] This is only one example as to why the Court declines to adopt Ms. Sisolak's computation of back pay.
3. The Court finds that if Mr. McDowell had been hired on at Parker Drilling in February 2010, he would have received 11 months of income during that year as a Junior Rig Manager. The salary for that position in that year was $109,080, plus a 15% locality bonus, for a total salary of $125,442. 11/12ths of that amount is $114,989.
4. The Court finds it more likely than not that had Mr. McDowell been hired by Parker Drilling in early 2010 as a Junior Rig Manager, he would have started

---

[8] On this topic, the Court expressly disagrees with Ms. Sisolak's opinion that the cost of air travel to and from the job site on the North Slope should be considered an employee benefit.

working as a Senior Rig Manager sometime in 2011 and continued in that position through trial in March 2015. The Court bases this finding upon consideration of all the evidence presented at trial, including the following:

a. Mr. McDowell interviewed with Parker Drilling when it was in the midst of crewing-up two new rigs, and therefore it had several positions open for Junior Rig Managers and Senior Rig Managers.

b. In 2010 and 2011, Parker Drilling's wages were considerably below the market rate on the North Slope, and its rigs were not completed. This would make it more likely that an individual with Mr. McDowell's background as a driller would be hired on as a Junior Rig Manager and promoted to Senior Rig Manager sooner than might otherwise be the case.

c. Although Parker Drilling presented evidence that it had experienced a large turnover rate in its Alaska operations when its wage rates were substantially below market, the evidence also demonstrated that the turnover was considerably more pronounced among the less experienced workers, and not among the rig managers.

d. Mr. McDowell persuasively testified that he was an experienced, long term driller on oil rigs, although the Court has also given careful consideration to the incidents of employee discipline both before and after February 2010.

In light of the foregoing, the best indicator of the amount of compensation that Mr. McDowell would have received from January 2011 through March 2015 is the amount that Parker Drilling paid to Patrick Lynch, a rig manager at Parker Drilling during that entire time.

5. In 2014, Mr. McDowell earned $55,908 as a rig manager in the first three months of the year working for Inlet Drilling. On or about May 29, 2014, Mr. McDowell became a consultant for an oil company and continued in that position throughout most of 2014. At trial, he introduced consulting invoices for work performed through October 21, 2004 which totaled $114,125. He testified that did some additional consulting work through December 16, 2014. Based on that evidence,

the Court estimates that Mr. McDowell earned additional consulting income above the $114,125 of approximately $30,000 in 2014. Therefore, his total estimated income for 2014, including the first three months he worked at Inlet Drilling, is $200,033. However, Mr. McDowell did not receive any employee benefits after the first three months of the year.

6. Mr. McDowell is entitled to back pay from February 2, 2010 through the time of trial. The evidence established that he remained steadily employed throughout most of that time, and that he had continued to look for work after December 2014, when the consulting job ended, up until trial. The Court finds that throughout that entire five year period, Mr. McDowell used reasonable diligence in seeking and retaining employment. Defendant did not introduce any evidence that there were other suitable higher paying positions available to Mr. McDowell that he failed to use reasonable care and diligence to obtain.

7. No evidence was presented at trial that Mr. McDowell refused a job substantially similar to the one he was denied by Parker Drilling at any time from February 2010 through March 2015.

8. Mr. McDowell continued to fulfill his duty to mitigate damages after he was terminated from Nordic-Calista in September 2013 because he demonstrated reasonable diligence when he promptly sought and obtained substitute employment with Inlet Drilling Alaska within approximately one month of his termination. Therefore, back pay should not be adjusted due to this one-month period of unemployment.

9. Based upon the jury's verdict, the Court's findings, and the applicable law, the Court finds that Mr. McDowell is entitled to back pay benefits for the period from February 2010 through March 2015. Applying the foregoing findings to the income evidence in the record results in the following back pay calculation:

| Year | Kevin McDowell's Earnings | Pat Lynch's Earnings | Earnings Difference |
|---|---|---|---|
| 2010 | $68,660 | $114,989[9] | $46,329 |
| 2011 | $135,505 | $135,942 | $437 |
| 2012 | $134,883 | $166,291 | $31,408 |
| 2013 | $134,677 | $186,957 | $52,280 |
| 2014 | $200,033 | $212,898 | $12,865 |
| To 3/31/2015 | $0 | $53,225 | $53,225 |

**Total Earnings Difference = $ 196,544 -- back pay due before benefits and interest**

10. From February 2010 through March 2014, the value of the employment benefits that Mr. McDowell received from his employers is comparable to the value of the Parker Drilling benefits he would have received when computed as a percentage of earnings. Based on the evidence presented, the value of these benefits is 10% of the earnings, inclusive of the 401(k) match. Therefore, Mr. McDowell's back pay award will be increased by 10% of the difference between his earnings and the Parker Drilling earnings during that time. This results in the following additional back pay award:

- Lost employee benefits due to reduced earnings from February 2010 through December 2013 computed at 10% of the difference in earnings during that period: $13,054

---

[9] This amount is slightly greater than Pat Lynch's salary during that year because Mr. Lynch was initially hired at a lower paying position than was offered to Mr. McDowell. *See* Finding of Fact #3 above.

- Difference in employee benefits from January 2014 through March 2014 computed at 10% of the difference in earnings during that period: (-$268).

- Total value of lost employment benefits from February 2010 through March 2014: **$12,786**

11. Beginning in April 2014, Mr. McDowell no longer had any employment benefits available to him. Therefore, the Court finds that the lost benefits for the period from April 2014 through May 2015 should be based on 10% of Mr. Lynch's entire earnings during that time, which earnings are estimated at $212,898, such that the value of the lost benefits for the period from April 2014 through March 2015 is **$21,289.**

12. Based upon the foregoing, Mr. McDowell is entitled to a total back pay award before interest in the amount of **$230,619.**

13. The Court will await further briefing from the parties as to the computation of prejudgment interest on the back pay award.

14. The Court finds that an award of front pay is not warranted in this case. Based upon the evidence presented at trial, including Mr. McDowell's entire job history, evidence regarding the volatility of employment in the oil industry in Alaska, and the average tenure at which Mr. McDowell has stayed at various positions during his long career, the Court finds it more likely than not that Mr. McDowell would not have continued working at Parker Drilling after March 2015 if he had begun there in February 2010 – a period of over five years. Moreover, based upon Mr. McDowell's 2014 earnings, the Court finds that with reasonable diligence, and beginning in April 2015, Mr. McDowell is more likely than not to find employment

at an earnings level commensurate to what he would have earned had he been working at Parker Drilling.

15. Neither Mr. McDowell nor the EEOC requested reinstatement of Mr. McDowell to Parker Drilling as a remedy in this case, and the Court finds that in any event such a remedy is not warranted because the award of the approximate five years in back pay as set forth herein is the appropriate remedy to make Mr. McDowell whole.

16. The EEOC did not present any evidence of any other instances of disability discrimination by Parker Drilling at any time since February 2010. The Court is not persuaded that there is a risk of future disability-based discrimination against job applicants to Parker Drilling. Given the isolated nature of the incident with Mr. McDowell, the change in human resources personnel that has occurred at Parker Drilling since early 2010, and the evidence regarding the efforts Parker Drilling has made to minimize the risk of future disability discrimination, the Court finds that there is a low risk of a cognizable danger of a recurrent violation of the ADA involving other job applicants to Parker Drilling. Accordingly, no injunctive relief will be granted.

## **CONCLUSIONS OF LAW**

1. The remedies provided for in both federal and state anti-discrimination laws are intended to make whole a person who has been unlawfully discriminated against.[10]

---

[10] *Odima v. Westin Tucson Hotel*, 53 F.3d 1484, 1495 (9th Cir. 1995); *University of Alaska v. Chauvin*, 521 P.2d 1234, 1240 (Alaska 1974).

Back pay is typically an appropriate equitable remedy.[11] "Indeed, there is a presumption in favor of back pay awards."[12]

2. The Supreme Court has held that "backpay should be denied only for reasons which, if applied generally, would not frustrate the central statutory purposes of eradicating discrimination throughout the economy and making persons whole for injuries suffered through past discrimination."[13] "Backpay has an obvious connection to [preventing future discrimination]. If employers faced only the prospect of an injunctive order, they would have little incentive to shun practices of dubious legality. It is the reasonably certain prospect of a backpay award that 'provide(s) the spur or catalyst which causes employers . . . to self-examine and to self-evaluate their employment practices . . . "[14]

3. The remedy provisions in Title VII are made applicable to ADA actions pursuant to 42 U.S.C. § 12117(a).

4. "[42 U.S.C. §] 2000e-5 imposes upon plaintiffs seeking back pay a duty to mitigate damages by seeking alternative employment with 'reasonable diligence.'"[15]

5. "This duty [to mitigate] . . . requires the claimant to use reasonable diligence in finding other suitable employment. Although the unemployed or underemployed claimant need not go into another line of work, accept a demotion, or take a demeaning

---

[11] *See Caudle v. Bristow Optical Co., Inc.*, 224 F.3d 1014, 1020 (9th Cir. 2000) ("An award of back pay is appropriate to advance Congress' intent to make persons whole for injuries suffered through past discrimination.") (citation and internal quotation marks omitted)

[12] *Caudle*, 224 F.3d at 1020.

[13] *Albermarle Paper Co. v. Moody*, 422 U.S. 405, 421 (1975).

[14] *Id.* at 417–18 (quoting *United States v. N.L. Indus., Inc.*, 479 F.2d 354, 379 (8th Cir. 1973).

[15] *Caudle v. Bristow Optical Co.*, 224 F.3d 1014, 1020 (9th Cir. 2000) (internal citations omitted).

position, he forfeits his right to back pay if he refuses a job substantially equivalent to the one he was denied."[16]

6. A defendant bears the burden of establishing a plaintiff's failure to mitigate damages. To satisfy this burden, a defendant must prove that "during the time in question there were substantially equivalent jobs available, which [the plaintiff] could have obtained, *and* that [the plaintiff] failed to use reasonable diligence in seeking one."[17]

7. Back pay does not cease to accrue when a plaintiff obtains a position that is substantially similar to the position he was denied, if that substantially similar position is at a pay rate less than the position denied. Instead, the requirement that a plaintiff accept substantially similar employment is a component of the duty to *mitigate* damages.

8. "An award of prejudgment interest on a back pay award is appropriate."[18]

9. Reinstatement is a statutorily authorized remedy under Title VII. "In discriminatory discharge cases, the decision whether to order reinstatement is within the discretion of the trial court."[19]

10. "Front pay is the term used to describe damages paid as [prospective] compensation for training or relocating to another position."[20]

---

[16] *Ford Motor Co. v. EEOC*, 458 U.S. 219, 231–32 (1982).

[17] *Odima v. Westin Tucson Hotel*, 53 F.3d 1484, 1497 (9th Cir. 1995) (quoting *EEOC v. Farmer Bros. Co.*, 31 F.3d 891, 906 (9th Cir. 1994)) (modification and emphasis in original).

[18] *Domingo v. New England Fish Co.*, 727 F.2d 1429, 1446 (9th Cir. 1984); *Price v. Stevedoring Services of America, Inc.,* 697 F.3d 820, 837 (9th Cir. 2012)*;* 28 U.S.C. § 1961(a); AS 09.30.070.

[19] *See* 42 U.S.C. § 2000e-5(g)(1); *Cassino v. Reichhold Chems., Inc.*, 817 F.2d 1338, 1346 (9th Cir. 1987).

[20] *Caudle v. Bristow Optical Co.*, 224 F.3d 1014, 1020 (9th Cir. 2000) (modification in original);

11. "Because of the potential for windfall . . . [the use of front pay] must be tempered. It can be awarded to complement a deferred order of reinstatement or to bridge a time when the court concludes the plaintiff is reasonably likely to obtain other employment."[21]

12. An award of front pay "must be reduced by the amount [a] plaintiff could earn using reasonable mitigation efforts. . . . [and] the plaintiff's duty to mitigate must serve as a control on front pay damage awards."[22]

13. In addition, "[a] plaintiff's past work history may be relevant to calculating a front pay award when it suggests that the plaintiff might not have been employed steadily in the future."[23]

14. Under Alaska law, an award of front pay or "future wage loss" is meant to reflect the loss of wages for the "likely period of employment."[24] In *Reust*, the Alaska Supreme Court upheld a jury award of front pay based on a finding that an employee would have remained with his employer for an additional seven years had he not been discharged in retaliation for testifying in previous litigation.

---

*see Thorne v. City of El Segundo*, 802 F.2d 1131, 1137 (9th Cir. 1986) (reinstatement not appropriate where "excessive hostility" exists).

[21] *Traxler v. Multnomah Cnty.*, 596 F.3d 1007, 1012–13 (9th Cir. 2010) (quoting *Duke v. Uniroyal Inc.*, 928 F.2d 1413, 1424 (4th Cir. 1991) (modifications in original); *see Caudle*, 224 F.3d at 1020 (citing *Gotthardt v. Nat'l R.R. Passenger Corp.*, 191 F.3d 1148, 1157 (9th Cir. 1999)).

[22] *Cassino v. Reichhold Chemicals, Inc.*, 817 F.2d 1338, 1347 (9th Cir. 1987) (internal citations and quotation marks omitted).

[23] *Gotthardt*, 191 F.3d at 1157.

[24] Reust v. Alaska Petro. Contractors, Inc., 127 P.3d 807, 817 (Alaska 2005).

15. Even if an individual complainant has been made whole by the relief awarded, the EEOC has a right of action that is independent of the employee's private right of action. This is because "the EEOC is not merely a proxy for the victims of discrimination, but acts also to vindicate the public interest in prevent employment discrimination. By seeking injunctive relief, the EEOC not only deters future unlawful discrimination but also seeks to protect aggrieved employees and others similarly situated from the fear of retaliation for filing Title VII charges. By seeking injunctive relief, moreover, the EEOC promotes public policy and seeks to vindicate rights belonging to the United States as a sovereign."[25]

16. Whether a district court can issue a permanent injunction turns on a finding that "there exists some cognizable danger of a recurrent violation" that is "based on appropriate findings supported by the record." In making such a finding, a district court may consider "the degree of scienter involved; the isolated or recurrent nature of the infraction; the defendant's recognition of the wrongful nature of his conduct; the extent to which the defendant's professional and personal characteristics might enable or tempt him to commit future violations; and the sincerity of any assurances against future violations."[26]

---

[25] *E.E.O.C. v. Hacienda Hotel*, 881 F.2d 1504, 1519 (9th Cir. 1989), *overruled on other grounds by Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998), *and Faragher v. City of Boca Raton*, 524 U.S. 775 (1998) (internal citations, quotation marks, and italics omitted).

[26] *United States v. Laerdal Mfg. Corp.*, 73 F.3d 852, 845–55 (internal citations and quotation marks omitted); *see Orantes-Hernandez v. Thornburgh*, 919 F.2d 549, 564 (9th Cir. 1990) ("Permanent injunctive relief is warranted where . . . defendant's past and present misconduct indicates a strong likelihood of future violations.").

**CONCLUSION**

Based on the foregoing, IT IS ORDERED that

1. Plaintiff-Intervenor Kevin D. McDowell is entitled to back pay in the amount of **$230,619** from Parker Drilling Company;

2. Plaintiff and Plaintiff-Intervenor's request for front pay to Mr. McDowell is DENIED;

3. The EEOC's claim of injunctive relief is DENIED;

4. The Clerk of Court is directed to enter judgment accordingly.[27]

DATED this 29th day of May, 2015 at Anchorage, Alaska.

*/s/ Sharon L. Gleason*
UNITED STATES DISTRICT JUDGE

---

[27] The judgment shall also include the $15,000 of non-economic losses awarded by the jury on the ADA claim; and shall also include the various fee awards previously entered by the Court. See Docket 343 (Special Verdict); Dockets 150, 169 (fee orders).